**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **STEVEN LEE STRANGE** | **PLAINTIFF** |
| **VERSUS** | **CIVIL ACTION NO.: 1:09cv252-HSO-JMR** |
| **KEN BROADUS, JEROME BARNES,**<br>**JACKSON COUNTY BOARD OF**<br>**SUPERVISORS, and MIKE BYRD** | **DEFENDANTS** |

_____

## REPORT & RECOMMENDATIONS:

This matter is before the Court on Defendants' Motion [24-1] for Summary Judgment filed

on behalf of Mike Byrd, Ken Broadus, Jerome Barnes and Jackson County Board of Supervisors

(collectively hereinafter "Defendants") on November 25, 2009.  Defendants' Motion for Summary

Judgment is accompanied by a Memorandum [25-1] in Support thereof.  To date, Plaintiff has not

filed a Response in Opposition.  The Court being fully advised in the premises, and after carefully

considering the pleadings filed as a matter of record, along with the applicable law, recommends that

Defendants' Motion [24-1] for Summary Judgment be granted and Plaintiff's claims be dismissed

with prejudice.

## STATEMENT OF THE CASE:

Plaintiff filed this *pro se* § 1983 action against the Defendants alleging that he suffered

violations of his constitutional rights while being detained as a pretrial detainee at the Jackson

County Adult Detention Center ("JCADC") on April 2, 2009.[1]

---

[1] The Court notes that Plaintiff does not specify whether his claims are against Defendants in their individual capacities, their official capacities, or both.  Because *pro se* complaints must be construed liberally, the Court will interpret Plaintiff's Complaint to allege claims against Defendants in both their individual and official capacities.  *See Williams v. Love,*  2006 WL 1581908, *5 (S.D.Tex. 2006).

## FACTS:

Plaintiff was booked and detained at the JCADC on July 19, 2007, to await trial on the charge of Capital Murder. (*See* Ex. "1" Attach. Defs.' Mot. [24-2] Summ. J.) On April 2, 2009, Plaintiff filed his original Complaint against Ken Broadus, Mike Byrd, Jerome Barnes, and Jackson County, Mississippi. On April 21, 2009, Plaintiff voluntarily dismissed Jackson County, Mississippi and added Jackson County Board of Supervisors as a defendant. (*See* Resp. [9-1] Order; *see also* Order [10].) Plaintiff pled guilty to the lesser charge of Murder on August 11, 2009, and was sentenced to life in the state penitentiary. (*See* Ex. "2" Attach. Defs.' Mot. [24-3] Summ. J.) Accordingly, Plaintiff was transferred into the custody of the Mississippi Department of Corrections on September 15, 2009. (*See* Ex. "3" Attach. Defs.' Mot. [24-3] Summ. J.)

In his Complaint, Plaintiff contends that he was subjected to unconstitutional conditions of confinement. Specifically, Plaintiff alleges that the facility was overcrowded, that he was forced to sleep on a mattress on the floor, that while in zone BE his mattress was taken away from him in the mornings, and that he did not have access to writing materials while he was placed in isolation. (Pl.'s Compl. [1-1] 4-6.) Plaintiff also claims the JCADC is a fire hazard because there are no evacuation plans, no visible fire extinguishers, and no sprinklers in any of the old zones, cells or hallways. *Id.* at 5.

Also, Plaintiff claims that he was denied adequate medical care. Plaintiff alleges that he informed Nurse Barnes that he needed to see a mental health professional several times, but was not provided the counseling he requested. *Id.* at 4-5. Plaintiff states that he was placed on Celexa and Lithium, but he claims neither helped him. *Id.* Plaintiff further claims that Defendant Barnes placed him on Lithium without consulting a psychologist or Dr. Ross, the JCADC physician. *Id.*

Lastly, Plaintiff claims that Defendants failed to protect him. Particularly, Plaintiff alleges

that he was placed back into zone ME and was assaulted by five (5) inmates after informing Deputy Nutefall and Lt. Cindy Stewart that certain inmates in that zone wanted to "jump on [him]." *Id.* at 5-6.

Plaintiff seeks the following relief: (1) to see a mental health professional, (2) something done about overcrowding, (3) the jail to install a sprinkler system, (4) Major Broadus to stop taking mattresses from inmates, (5) monetary damages, (6) twenty-four hour nurses, and (7) an investigation into the practices of the JCADC. *Id.* at 4.

## STANDARD OF REVIEW:

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-97 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). In other words, "[o]nly disputes over the facts that might effect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Furthermore, it is well settled in this circuit that "[b]are bones allegations are insufficient to withstand summary judgment because the opposing party must counter factual allegations by the moving party with specific, factual disputes; mere general allegations are not a sufficient response." *Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986) (*quoting Nicholas Acoustics Specialty Co. v. H & M Constr. Co.*, 695 F.2d 839, 845 (5th Cir. 1983)).

In considering a motion for summary judgment, the trial court views the evidence in the light

most favorable to the party resisting the motion.  *See Howard v. City of Greenwood*, 783 F.2d 1311, 1315 (5th Cir. 1986).  To survive summary judgment, the non-movant must demonstrate the existence of a disputed issue of material fact.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986).  To avoid the entry of summary judgment, the non-moving party must bring forth significant probative evidence demonstrating the existence of a triable issue of fact.  *See Howard*, 783 F.2d at 1315.

42 U.S.C. § 1983 imposes liability upon any person who, acting under the color of state law, deprives another of federally protected rights.  Therefore, section 1983 affords a remedy to those who suffer, as a result of state action, deprivation of rights, privileges, or immunities secured by the Constitution and the Laws of the United States.  *White v. Thomas*, 660 F. 2d 680,693 (5th Cir. 1981).  A plaintiff cannot succeed merely by showing any deprivation of his rights.  Section 1983 was intended to protect rights protected by federal law.  *Karmi-Panahi v. Los Angles Police Dept.*, 839 F. 2d 621 (9th Cir. 1988); *Wright v. Collins*, 766 F.2d 841 (5th Cir. 1985).  It neither provides a general remedy for the alleged tort of state officials, nor opens the federal courthouse doors to relieve complaints of all who suffer injury at the hands of the state or its officers.  Municipal liability under section 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose "moving force" is the policy or custom.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001); *Monell v. Dep't of Soc. Services*, 436 U.S. 658, 694 (1978).  *Monell* and later decisions reject municipal liability predicated on *respondeat superior*, because the text of section 1983 will not bear such reading.  *Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997).  "Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell*, 436 U.S. at 691.

A suit against a governmental agent or officer in his official capacity is a suit against the office that the employee holds and not against the actual employee. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985). The three requirements for municipal liability outlined in *Piotrowski* are necessary in order to distinguish between individual violations by local employees and those that can be fairly attributed to conduct by the governmental entity itself. *See Piotrowski*, 237 F.3d at 578-79. The United States Supreme Court has clearly emphasized the necessity of an official policy as a predicate to recovery under a theory of municipal liability:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Monell*, 436 U.S. at 695. Therefore, municipalities may not be held liable for acts of lower level employees, but may be held liable for constitutional violations committed pursuant to an official policy or custom. *Piotrowski*, 237 F.3d at 578.

In addition, not only must the plaintiff establish that a policy or custom of the municipality was the "moving force" behind the alleged violation of a constitutional right; he must also establish that the municipality was "deliberately indifferent" to the known consequences of the policy. *Id.* at 580; *See Lawson v. Dallas County*, 286 F.3d 257, 264 (5th Cir. 2002) ("[T]he municipality must maintain its official policy with deliberate indifference to a constitutionally protected right."). Deliberate indifference is an objective standard which encompasses "not only what the policymaker actually knew but what he should have known, given the facts and circumstances surrounding the official policy and its impact on the plaintiff's rights." *Lawson*, 286 F.3d at 264. The Fifth Circuit has noted that the plaintiff bears an "extremely heavy burden" in establishing both the municipality's

deliberate indifference and a causal link between the alleged custom and the alleged constitutional

violation. *Peters v. City of Biloxi*, 57 F.Supp. 2d 366, 376 (S.D. Miss. 1999). *See Snyder v.*

*Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998); *Piotrowski*, 237 F.3d at 580 (Stating that these two

requirements "must not be diluted").

## ANALYSIS:

As a pretrial detainee, Plaintiff's constitutional rights flow from the Fourteenth Amendment

Due Process Clause rather than the Eighth Amendment prohibition against cruel and unusual

punishment. Because they have not yet been convicted of the crime with which they are charged,

pretrial detainees have a due process right not to be punished for that crime. *Bell v. Wolfish*, 441 U.S.

520, 535 (1979). The Supreme Court has stated the distinction between conditions that may be

constitutionally imposed on convicted prisoners and conditions that may be imposed on pretrial

detainees as follows:

> [T]he State does not acquire the power to punish with which the
> Eighth Amendment is concerned until after it has secured a formal
> adjudication of guilt in accordance with due process of law. **Where
> the State seeks to impose punishment without such an
> adjudication, the pertinent constitutional guarantee is the Due
> Process Clause of the Fourteenth Amendment.**

*Ingraham v. Wright*, 430 U.S. 651, 671-72 (1977) (emphasis added).

The appropriate standard to apply in analyzing constitutional challenges by pretrial detainees

depends on whether the alleged unconstitutional conduct is a "condition of confinement"[2] or

---

[2] The following were deemed to be conditions-of-confinement cases: *Murphy v. Walker*, 51 F.3d
714 (7th Cir.1995) (revocation of telephone, television, and cigarette privileges); *Collazo-Leon v. United
States Bureau of Prisons*, 51 F.3d 315 (1st Cir.1995) (disciplinary segregation and denial of telephone
and visitation privileges); *United States v. Millan*, 4 F.3d 1038 (2d Cir.1993) (length of pre-trial
detention); *Hause v. Vaught*, 993 F.2d 1079 (4th Cir.1993) (restriction on mail privileges); *Brogsdale v.
Barry*, 926 F.2d 1184 (D.C.Cir.1991) (overcrowding); *Lyons v. Powell*, 838 F.2d 28 (1st Cir.1988) (22-
23-hour confinement and placement of mattress on floor); *Fredericks v. Huggins*, 711 F.2d 31 (4th
Cir.1983) (policy of refusing detainees access to drugs for rehabilitation); *Lareau v. Manson*, 651 F.2d

"episodic act or omission." *See Scott v. Moore,* 114 F.3d 51, 53 (5th Cir.1997) (en banc).    The

Fourteenth Amendment protects pretrial detainees from the imposition of conditions of confinement

that constitute "punishment." *Hamilton v. Lyons,* 74 F.3d 99, 103 (5th Cir.1996).  "Punishment" may

be loosely defined as "a restriction or condition that is not reasonably related to a legitimate goal-if

it is arbitrary or purposeless" *Bell*, 441 U.S. at 539.  "Reasonably related" means that the restriction

is (1) rationally related to a legitimate governmental purpose, and (2) not excessive in relation to that

purpose. *Id.* at 561.  "[T]his test is deferential to jail rulemaking; it is in essence a rational basis test

of the validity of jail rules." *Hare v. City of Corinth, Miss.,* 74 F.3d 633, 646 (5th Cir.1996).

When a pretrial detainee alleges unconstitutional conduct which involves an episodic act or

omission, the question is whether the state official acted with deliberate indifference to the inmate's

constitutional rights. *Gibbs v. Grimmette,* 254 F.3d 545, 548 (5th Cir. 2001).  When the alleged

constitutional violation is a particular act or omission by an individual that points to a derivative

policy or custom of the municipality, the deliberate indifference standard is also appropriate. *Scott,*

114 F.3d  at 53-54.  To prove deliberate indifference, a pretrial detainee must show that the state

official knew of and disregarded an excessive risk to the inmate's health or safety. *See Stewart v.

Murphy,* 174 F.3d 530, 534 (5th Cir.1999).

The Court notes that Plaintiff's Complaint alleges both unconstitutional conditions of

confinement and episodic acts or omissions.  Therefore, the Court shall address the two categories

of allegations individually.

## I.  Conditions of Confinement:

Plaintiff alleges that the Defendants are officially liable because they failed to remedy the

allegedly unconstitutional conditions at the JCADC.  The Court notes that Plaintiff's official capacity

96 (2d Cir.1981) (overcrowding).

claims against the Defendants are, in reality, claims against the offices in which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against the Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

The majority of Plaintiff's Complaint is dedicated to challenging the constitutionality of his conditions of confinement at the JCADC. However, other than the previously noted allegations of unconstitutional conditions, Plaintiff presents no evidence that an official policy of the JCADC was responsible for the alleged violation of his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertions amount to isolated instances of negligent conduct, which are insufficient to support the instant official capacity claims against the Defendants. Accordingly, the Defendants are entitled to summary judgment on Plaintiff's official capacity claims as they relate to the conditions of the JCADC.

Additionally, Plaintiff's Complaint seeks to impose liability against Defendants Broadus and Byrd in their individual capacities for the allegedly unconstitutional conditions at the JCADC. However, because Defendants Broadus and Byrd are law enforcement officials, they may raise the defense of qualified immunity. *See Gagne v. City of Galveston*, 805 F.2d 558, 559 (5th Cir. 1986).

In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert v.*

*Gilly*, 500 U.S. 226, 231 (1991).    As a pretrial detainee, Plaintiff has a constitutional right not to

be punished for the crimes with which he has been charged.  Therefore, to the extent that Plaintiff

seeks to establish § 1983 liability against Defendants Broadus and Byrd, Plaintiff must offer proof

that the conditions at the JCADC were imposed as a form of punishment.  *Hamilton,* 74 F.3d at 103.

 A punitive purpose can be established by direct evidence of intent by detention facility officials to

punish the pretrial detainee. *Bell,* 441 U.S. at 538.  Alternatively, a punitive purpose may be inferred

if the challenged condition is not reasonably related to a legitimate governmental objective.  *Id.* at

539.

Plaintiff alleges that the JCADC is overcrowded.  At the outset, the Court notes that, absent

some indication of punitive intent, the mere overcrowding of a jail does not  violate the Fourteenth

Amendment.  *See Collins v. Ainsworth*, 382 F.3d 529, 540 (5th Cir. 2004); *Crook v. McGee*, 2008

WL 53269, *2 (S.D. Miss. 2008); *Robertson v. Coahoma County, Miss*., 2008 WL 3334091, *5

(N.D.Miss. 2008).  Plaintiff claims the jail has been overcrowded between 100% and 300%,

however, Plaintiff makes no direct allegations that Defendant Broadus or Defendant Byrd

intentionally operated the JCADC in an overcrowded condition as a form of punishment.  While the

Defendants concede that the JCADC is operated on occasion above preferred capacity, they argue

that a new building has been constructed in order to remedy this problem and a new jail is currently

in the planning stages.  Defendants also note that numerous inmates have been moved out of the

JCADC to other detention centers and that temporary facilities are being built to house inmates until

the new jail is constructed.  The Court finds that Plaintiff has failed to establish that the

overcrowding at the JCADC is not reasonably related to a legitimate governmental interest such as

balancing an overwhelming number of detainees with a finite amount of available housing.

Plaintiff additionally contends that the overcrowding causes or significantly contributes to

problems for the incarcerated inmates. Plaintiff alleges that on occasion he is forced to sleep on a mat on the floor. The Court notes that Plaintiff has made no allegations or offered any evidence that Defendant Broadus or Defendant Byrd is capable of operating the JCADC in a different manner, but chooses not to as a form of punishment. The Court further finds that Plaintiff's specific allegation does not rise to the level of a constitutional violation. Pretrial detainees do not have a constitutional right to an elevated bed. *Mann v. Smith*, 796 F.2d 79, 85-6 (5th Cir. 1986). This issue does not rise to an actionable claim.

Plaintiff also complains that while in isolation in August of 2008 his mattress was taken away from him during the morning hours and returned at night, which forced him to sit or lay on cold concrete and steel. (Pl.'s Compl. [1-1] 5.) However, Plaintiff has failed to allege that he was deprived a mattress during daylight hours for the purpose of punishment, and he has presented no evidence to suggest that the deprivation was not reasonably related to a legitimate governmental interest. Defendants have noted that mattresses have been removed during the day due to inmates destroying them and clogging drains; therefore, they contend that the mattresses are removed during the day and returned at night when the inmates are more likely to use them to sleep. (*See* Ex. "4" Attach. Defs.' Mot. [24-3] Summ. J.) Furthermore, "there is . . . a *de minimis* level of imposition with which the Constitution is not concerned." *Bell*, 441 U.S. at 539 (*citing Ingraham v. Wright*, 430 U.S. 651, 674 (1977)). This issue does not rise to an actionable claim.

Plaintiff alleges that certain conditions at the JCADC render the jail a fire hazard. Plaintiff states there are no fire evacuation plans posted in the zones or in the hallway, there are no fire extinguishers in plain sight, and there are no sprinklers in any zone, cell or hallway except for the new building. (Pl.'s Compl. [1-1] 5.) The Court notes that Plaintiff's allegation regarding the alleged lack of fire safety is merely speculative and fails to state a constitutional violation. Further, the

JCADC is annually inspected by the State Fire Marshal and City Fire Department. (*See* Ex. "5" Attach. Defs.' Mot. [24-3] Summ. J.) Also, the JCADC has a "Fire Response Plan" implemented to ensure a rapid and effective response to a fire emergency within the facility. *Id.* This issue is without merit.

Finally, Plaintiff's allegation regarding the alleged lack of access to writing materials is insufficient to state a constitutional claim. Plaintiff's specific claim is that while he was in isolation on different occasions in September 2007, February 2008, August 2008, December 2008, and January 2009 he was without writing materials to contact family, the courts or media. (Pl.'s Compl. [1-1] 6.) The Court will treat this as a denial of access to courts claim. In order for Plaintiff to succeed in an access to the courts claim, he must show actual injury, which includes evidence proving that the denial of legal resources hindered his efforts to pursue a non frivolous case. *See McDonald v. Steward,* 132 F.3d 225, 230-31 (5th Cir. 1998). Defendants note that at the time Plaintiff filed his Complaint he had been placed in isolation a total of fifteen (15) days. (Defs.' Mem. [25-1] 9; *see also* Ex. "6" Attach. Defs.' Mot. [24-4] Summ. J.) Furthermore, Defendants contend that inmates are allowed to keep a pen and paper while in lockdown and that they are provided telephone privileges restricted to certain times. (Defs.' Mem. [25-1] 8.) In support, Defendants cite Plaintiff's own use of pen and paper while in isolation on April 20, 2009 to pass a note to JCADC staff. (*See* Ex. "8" Attach. Defs.' Mot. [24-5] Summ. J.) Regardless, in the present instance, Plaintiff has presented no evidence that his alleged lack of writing materials has prejudiced or harmed his pursuit of this or any legal matter. This issue is without merit.

After a careful analysis of Plaintiff's allegations concerning the conditions of his confinement at the JCADC, the Court finds that Defendants Broadus and Byrd are entitled to qualified immunity as to Plaintiff's individual capacity claims. Plaintiff has failed to provide any direct evidence that

Defendant Broadus or Defendant Byrd imposed any of the alleged conditions as a punitive measure. Furthermore, Plaintiff has failed to submit evidence tending to prove that the alleged conditions were not reasonably related to a legitimate governmental interest. Therefore, Plaintiff has failed to establish a violation of a clearly recognizable constitutional right.

## II.  Episodic Acts and Omissions:

In addition to the allegations concerning the conditions of the JCADC, Plaintiff also alleges that the Defendants are liable in both their official and individual capacities for various episodic acts and omissions which constituted deliberate indifference to his constitutional rights.

## A. Denial of Adequate Medical Treatment:

Plaintiff alleges that he was denied medical treatment while incarcerated at the JCADC. Plaintiff's official capacity claim against the Defendants is, in reality, a claim against the offices which they occupied at the time of the alleged incident and, ultimately, Jackson County. Therefore, to the extent Plaintiff brings this action against Defendants in their official capacities, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Plaintiff claims that Defendant Barnes failed to provide him with medical care. Specifically, Plaintiff claims that he suffers from mental problems dating back to 1982 and that Defendant Barnes failed to take him to see a mental health professional. (Pl.'s Compl. [1-1] 4.)  Plaintiff admits, however, that Dr. Ross prescribed him Celexa in November of 2007. *Id.*  Plaintiff further claims that Defendant Barnes prescribed him Lithium without consulting a psychologist or Dr. Ross. *Id.*  Also,

Plaintiff states that neither the Celexa nor the Lithium helped his mental problems. However, the record does not fully support Plaintiff's contentions. After informing Defendant Barnes that he had mental problems, Plaintiff was put on the list to see the facility doctor. On November 20, 2007, Plaintiff was seen by Dr. Ross for depression and was subsequently prescribed Celexa, an antidepressant. (*See* Exs. "9," "10," "11" Attach. Defs.' Mot. [27-1] Summ. J.) On September 21, 2007 and February 19, 2008, Defendant Barnes had Plaintiff sign medical information release forms so that he and Dr. Ross could review Plaintiff's prior medical records from previous incarcerations. (*See* Exs. "12," "13" Attach. Defs.' Mot. [24-5] Summ. J.) Upon reviewing Plaintiff's prior medical records, Dr. Ross prescribed Lithium to Plaintiff on March 14, 2008. (*See* Exs. "10," "11" Attach. Defs.' Mot. [27-1] Summ. J.) Other than the above mentioned allegations of inadequate medical care, Plaintiff presents no evidence that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such bare allegations, without more, are simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to isolated incidents of negligent conduct, which, by themselves, are insufficient to support the instant official capacity claim against the Defendants.

Plaintiff's Complaint also seeks liability against Defendant Barnes in his individual capacity. In response, he has plead the defense of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged a violation of a clearly established constitutional right. *Siegert,* 500 U.S. at 231. When an alleged constitutional violation for failure to provide adequate medical care stems from an episodic act or omission, the question is whether the state official acted with deliberate indifference to the individual's constitutional rights. *Gibbs*, 254 F.3d at 548. In order to prove deliberate indifference

to serious medical needs, and thus a constitutional violation, a prisoner must show that the state official knew of and disregarded an excessive risk to inmate health or safety. *See Stewart v. Murphy*, 174 F.3d 530, 534-35 (5th Cir. 1999).

Deliberate indifference is more than mere negligence in providing or failing to provide medical treatment. *See Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982). The law is clear that unsuccessful medical treatment, mere negligence, neglect, nor medical malpractice gives rise to a section 1983 cause of action. *See Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). Furthermore, disagreement with medical treatment alone is insufficient to support a claim under section 1983. Rather, "the plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs.'" *Domino v. Tex. Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001)(quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

Defendants contend, and the Court agrees, that Plaintiff has failed to meet his burden of establishing that Defendant Barnes was deliberately indifferent to his serious medical needs. Plaintiff's claim is that he was not properly treated for his "mental problems" and was not taken to see a mental health professional. However, after a thorough review of the record, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendant Barnes was deliberately indifferent to his serious medical needs. Plaintiff has not presented any evidence that Defendant Barnes refused to treat him, ignored his complaints or intentionally treated him incorrectly. To the contrary, the evidence of record shows that Plaintiff received medical attention appropriate to his needs from Defendant Barnes and Dr. Ross while he was incarcerated at the JCADC. After examining Plaintiff and reviewing his medical records, Dr. Ross prescribed Plaintiff

Celexa and Lithium for his depression. Also, Defendant Barnes and the JCADC medical staff were in daily contact with Plaintiff while administering his medications and no serious health conditions were ever noted. (*See* Ex. "15" Attach. Defs.' Mot. [27-1] Summ. J.) Furthermore, both Dr. Ross and Defendant Barnes stated that Plaintiff did not appear to exhibit signs of a serious mental health condition that warranted psychiatric or psychological counseling. (*See* Exs. "11," "14" Attach. Defs.' Mot. [27-1] Summ. J.) Plaintiff's allegation amounts to disagreement with his medications, however, disagreement with medical treatment alone is insufficient to support a claim under section 1983. *See Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Plaintiff has not alleged sufficient facts to permit an inference that Defendant Barnes was aware of and ignored a serious risk to Plaintiff's health.

The Court notes that on July 10, 2009, after Plaintiff filed the present action, Plaintiff was taken to Singing River Services, a mental health provider. (*See* Ex. "11" Attach. [27-1] Defs.' Mot. Summ. J.) Dr. Ross stated in his affidavit that it was clear Plaintiff was not satisfied with his medications, so in an effort to determine if there was anything else that could be done for him and out of an abundance of caution, Plaintiff was sent to Singing River Services. *Id.* Dr. Ross notes that Singing River Services did change some medications prescribed to Plaintiff. *Id.* Therefore, at most, Plaintiff's allegations against Defendant Barnes amounts to negligence. However, claimed negligence is not cognizable under § 1983. *Daniels v. Williams*, 474 U.S. 327, 329-30 (1986). The Court finds that Plaintiff has failed to prove that Defendant Barnes was in any way deliberately indifferent to an excessive risk to Plaintiff's safety or health.

B. Failure to Protect:

Plaintiff further alleges that Defendants exhibited deliberate indifference by failing to protect him from violence at the hands of other inmates. Specifically, Plaintiff alleges that in August of

2008 he was removed from M-E zone after informing Deputy Nutefall that he was afraid other inmates were going to harm him. (Pl.'s Compl. [1-1] 5-6.) Plaintiff was subsequently placed in B-E segregation where he also informed Lt. Stewart of his problems with other inmates in M-E zone. *Id.* Plaintiff claims that Lt. Stewart informed him that Major Broadus was aware of the situation and Plaintiff's choices were to either stay in B-E with no mattress or go back to M-E. *Id.* Plaintiff alleges upon his return to M-E he was assaulted by five (5) inmates. *Id.*

The record reveals that on August 25, 2008, Plaintiff informed Deputy Nutefall that he could not survive one more night in M-E dayroom. (*See* Ex. "16" Attach. Defs.' Mot. [24-5] Summ. J.) Accordingly, Plaintiff was removed to B-E for protective custody. *Id.* Three days later, on August 28, 2008, Plaintiff was returned to the M-E dayroom. (*See* Ex. "6" Attach. Defs.' Mot. [24-4] Summ. J.; *see also* Defs. Mem. [25-1] 13.) Thereafter, the record is devoid of any evidence of any assault against Plaintiff. He has provided no names of witnesses who may have observed this alleged assault and he identifies no specific individuals who perpetuated this alleged assault. Finally, the Court notes that there is a conspicuous absence of any medical requests, sick call slips, or grievances seeking medical treatment for any injuries sustained from the alleged assault.

As previously noted, Plaintiff brings this action against Defendants in both their individual and official capacities. In order to establish an official capacity claim, he must establish a constitutional violation, and in addition must satisfy the three requirements necessary to impose municipal liability: that the JCADC had an official policy, practice or custom which would subject it to section 1983 liability; that the official policy is linked to the constitutional violation(s); and that the official policy reflects the JCADC's deliberate indifference to that injury. *See Lawson*, 286 F.3d at 263.

Other than the above allegation of an incident of allegedly unconstitutional conduct, Plaintiff

presents no evidence, nor does he even allege, that an official policy of the JCADC existed which violated his constitutional rights. The Court finds that such a bare allegation, without more, is simply insufficient to support a claim that there existed a policy or custom which was the moving force behind any alleged constitutional violation. At best, Plaintiff's assertion amounts to an isolated incident of negligent conduct, which, by itself, is insufficient to support the instant official capacity claim against the Defendants.

To the extent that Plaintiff seeks to establish a claim against Defendants Broadus and Byrd in their individual capacities, Defendant Broadus and Defendant Byrd contend that they are shielded by the defense of qualified immunity. The Court notes, however, that Plaintiff has not shown or even alleged that Defendant Broadus or Defendant Byrd were personally involved in any alleged failure to protect or that they instituted or implemented an unconstitutional policy with respect to the same. "There is no respondeat superior liability under section 1983." *Eason v. Thaler*, 73 F.3d 1322, 1327 (5th Cir. 1996). Thus, neither Defendant Broadus nor Defendant Byrd can be held liable under Section 1983 pursuant to a theory of respondeat superior simply because the persons allegedly responsible for Plaintiff's injury, if any, were in the defendants' employ. *Baskin v. Parker*, 602 F.2d 1205, 1208 (5th Cir. 1979); *Barskdale v. King*, 699 F.2d 744, 746 (5th Cir. 1983). To hold either Defendant Broadus or Defendant Byrd liable, Plaintiff must present evidence and establish that either defendant "was personally involved in the acts causing the deprivation of his constitutional rights or that a causal connection exists between an act of [the defendant]... and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). Because Plaintiff has established neither, Defendant Broadus nor Defendant Byrd can be held liable for failing to protect Plaintiff from the alleged assault.

However, out of an abundance of caution, the Court will analyze Defendant Broadus and

Byrd's claim of qualified immunity. In assessing a claim of qualified immunity, the determination must first be made as to whether the plaintiff has alleged the violation of a clearly established constitutional right. *Siegert v. Gilly*, 500 U.S. 226, 231 (1991). Plaintiff was a pretrial detainee at the time of the incident on which he bases his failure to protect claim. In *Hare v. City of Corinth*, 74 F.3d 633 (5th Cir. 1996), however, the Fifth Circuit held "that the State owes the same duty under the Due Process Clause and the Eighth Amendment to provide both pretrial detainees and convicted inmates with basic human needs, including medical care and protection from harm, during their confinement." *Id.* at 650. Thus, regardless whether Plaintiff is a pretrial detainee or a convicted prisoner, the standard of liability is the same for episodic acts or omissions of jail officials that expose an inmate to being harmed by another inmate. *Hamilton v. Lyons*, 74 F.3d 99, 104 n.3 (5th Cir. 1996); *Hare* 74 F.3d at 650.

To establish a failure to protect claim, Plaintiff must show that he was detained "under conditions posing a substantial risk or serious harm and that [the defendants] were deliberately indifferent to his need for protection." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995); *see also Edwards v. Johnson*, 209 F.3d 772, 778 (5th Cir. 2000); *Hare*, 74 F.3d at 639. For an official to act with deliberate indifference, he "must both be aware of facts from which the inference could be drawn that substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In the present case, Plaintiff cannot prevail on his failure to protect claim, because he has not shown that he suffered an actual physical injury resulting from prison officials' purported failure to protect. *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). Plaintiff alleges that upon returning to M-E zone he "was assaulted by 5 inmates." (Pl.'s Compl. [1-1] 6.) However, as noted earlier, there is no evidence before the Court that such an assault occurred or that Plaintiff sustained any

injuries from the alleged assault. Plaintiff has not provided any names of witnesses who may have observed this alleged assault and he identifies no specific individuals who perpetuated this alleged assault. The Court also notes that there is a conspicuous absence of any medical requests, sick call slips, or grievances seeking medical treatment for any injuries sustained from the alleged assault.

While the identities of the inmates that Plaintiff was purported to be in fear of are not in the record, Defendants contend that prior to Plaintiff returning to M-E zone the inmates who were not getting along were removed. (Defs.' Mem. [25-1] 14; *see also* Ex. "17" Attach. Defs.' Mot. [24-5] Summ. J.) Furthermore, Plaintiff admits that he was given the option of whether or not to return to M-E zone or stay in B-E zone. (Pl.'s Compl. [1-1] 6.) Apparently, Plaintiff chose to return to M-E zone.

Based upon the facts presented, the Court is unable to conclude that Defendant Broadus or Defendant Byrd were in any way deliberately indifferent to Plaintiff's safety. Upon notifying Deputy Nutefall that he was afraid of other inmates, Plaintiff was removed from M-E zone and placed in isolation. After three days, Plaintiff chose to return to M-E zone. Further, Defendants contend that in the interim, the trouble inmates were removed from M-E zone and were not present upon Plaintiff's return. Lastly, there is absolutely no evidence that an assault on Plaintiff occurred. Accordingly, the Court is unable to conclude that Plaintiff has created a genuine issue as to whether Defendants violated his constitutional rights.

Assuming, *arguendo*, that Plaintiff suffered a violation of his constitutional rights, the Court finds that Defendant Broadus and Defendant Byrd would still be entitled to qualified immunity because their conduct was objectively reasonable. Plaintiff has presented no evidence that either Defendant Broadus or Defendant Byrd were aware of a significant threat to Plaintiff's safety. Furthermore, there is no evidence before the Court that Plaintiff sustained any injury. The Court is

unable to conclude that Defendant Broadus or Defendant Byrd exhibited any unreasonable conduct. After it became apparent that Plaintiff was in fear of other inmates, he was removed and placed in isolation. Plaintiff subsequently chose to return to M-E zone, and there is no evidence that any assault against Plaintiff occurred. In the case at hand, the Court finds that Plaintiff has not presented any evidence sufficient to allege a violation of a clearly established constitutional right or any unreasonable conduct on the part of the Defendants. Thus, the Court finds that the Defendant Broadus and Defendant Byrd are entitled to qualified immunity.

Although he has not presented any evidence that he suffered any physical injuries from the alleged assault or conditions at the JCADC, Plaintiff contends that his experiences left him suffering from stress. (Pl.'s Compl. [7-1] 4.) However, pursuant to the Prison Litigation Reform Act, "no federal civil action may be brought by a prisoner... for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). If a prisoner cannot provide evidence of a physical injury, the PLRA bars recovery for mental and emotional damages. *See Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999). In order to determine whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering, the "injury must be more than *de minimis*, but need not be significant." *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997). As noted above, Plaintiff has not presented any evidence that he suffered a physical injury and thus he is barred by the PLRA from seeking psychological damages.

The Court also finds that to the extent Plaintiff's complaint could be construed to allege claims under state law, they are barred by provisions contained in the Mississippi Tort Claims Act, MISS. CODE ANN. § 11-46-1, *et seq*. Specifically, the Act provides that a government subdivision shall not be liable for a claim "of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary, or other such institution regardless of

whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). The Court finds that because Plaintiff was an inmate at the time these events allegedly occurred, any claims arising under Mississippi law as a result of these alleged events are barred by the above provision.

Lastly, the Court notes that Plaintiff's complaint against Defendants requests injunctive relief. However, the record indicates that Plaintiff was transferred into the custody of MDOC on September 15, 2009 and is no longer incarcerated at the JCADC, thereby rendering his claims moot. *See Herman v. Holiday*, 238 F.3d 660,665 (5th Cir. 2001); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir. 1991).

## CONCLUSION:

After considering the evidence of record, the Court concludes that Plaintiff has failed to create a genuine issue as to whether Defendants violated Plaintiff's constitutional rights during his incarceration as a pretrial detainee at the JCADC. Plaintiff has presented no evidence indicating that the alleged conditions of confinement were imposed by Defendants for a punitive purpose. Further, Plaintiff's allegations that he was denied adequate medical care do not rise to the level of constitutional violations. Also, Plaintiff's assertion that Defendants failed to protect him from excessive force at the hands of other JCADC inmates is conclusory and unsupported by any probative evidence. Accordingly, the Court recommends that Defendants' Motion [24-1] for Summary Judgment be granted, and Plaintiff's official and individual capacity claims be dismissed with prejudice.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge

at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United States Auto Ass'n*, 79 F.3d 1425 (5th Cir. 1996).

**SO ORDERED** this the ___12th___ day of May, 2010.

_____s/ John M. Roper, Sr._____
CHIEF UNITED STATES MAGISTRATE JUDGE